United States Bankruptcy Court
Western District of Oklahoma

United States Trustee,

    Plaintiff

Ford,

    Defendant

Adv. Proc. No. 21-01062-SAH

# CERTIFICATE OF NOTICE

District/off: 1087-5        User: admin        Page 1 of 2

Date Rcvd: Apr 15, 2022        Form ID: pdf006        Total Noticed: 11

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Apr 17, 2022:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| aty | + | Jerry D. Brown, Jerry D. Brown, P.C., 5500 N. Western Ave., Suite 150, Oklahoma City, OK 73118-4016 |
| ust | + | James C Harmon, DOJ-Ust, 224 S. Boulder, Ste. 225, Tulsa, OK 74103-3026 |
| dft | + | Jill Nicole Ford, 16813 Little Leaf Lane, Edmond, OK 73012-0677 |
| dft | + | Trent Dwight Ford, 16813 Little Leaf Lane, Edmond, OK 73012-0677 |

TOTAL: 4

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| aty | + | Email/Text: USTPRegion20.OC.ECF@usdoj.gov | Apr 15 2022 20:53:00 | Marjorie J. Creasey, US Trustee Office, 215 Dean A McGee Avenue, Oklahoma City, OK 73102-3444 |
| smg | | Email/Text: bankruptcy@oesc.state.ok.us | Apr 15 2022 20:53:00 | Oklahoma Employment Security Commission, PO Box 53039, Oklahoma City, OK 73152-3039 |
| ust | + | Email/Text: USTPRegion20.OC.ECF@usdoj.gov | Apr 15 2022 20:53:00 | Charles Glidewell, United States Trustee, 215 Dean A. McGee Ave. 4th Fl., Oklahoma City, OK 73102-3479 |
| ust | + | Email/Text: USTPRegion20.OC.ECF@usdoj.gov | Apr 15 2022 20:53:00 | Felicia S Turner, 215 Dean A. McGee Avenue, Oklahoma City, OK 73102-3440 |
| ust | + | Email/Text: USTPRegion20.OC.ECF@usdoj.gov | Apr 15 2022 20:53:00 | Marjorie J. Creasey, DOJ-Ust, Marjorie J Creasey, 215 Dean A. McGee Ave., Room 408, Oklahoma City, OK 73102-3423 |
| ust | + | Email/Text: USTPRegion20.OC.ECF@usdoj.gov | Apr 15 2022 20:53:00 | United States Trustee, United States Trustee, 215 Dean A. McGee Ave., 4th Floor, Oklahoma City, OK 73102-3479 |
| pla | + | Email/Text: USTPRegion20.OC.ECF@usdoj.gov | Apr 15 2022 20:53:00 | United States Trustee, U.S. Department of Justice, 215 Dean A. McGee Ave.,, Rm. 408, Oklahoma City, OK 73102-3423 |

TOTAL: 7

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| ust | | John McClernon |
| ust | | Katherine Wieland |
| ust | | Lendy Heilaman |
| ust | | Michele Adams |
| ust | | Test UST |
| ust | | Vickie Kaufman |
| ust | | trustee11 |

District/off: 1087-5                                    User: admin                                    Page 2 of 2
Date Rcvd: Apr 15, 2022                                 Form ID: pdf006                                 Total Noticed: 11
TOTAL: 7 Undeliverable, 0 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Apr 17, 2022                          Signature:          /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on April 15, 2022 at the address(es) listed below:**

| Name | Email Address |
| --- | --- |
| Jerry D. Brown | |
| | on behalf of Defendant Trent Dwight Ford jdbrownpc@sbcglobal.net  jdbrown@oklahoma.net |
| Jerry D. Brown | |
| | on behalf of Defendant Jill Nicole Ford jdbrownpc@sbcglobal.net  jdbrown@oklahoma.net |
| Marjorie J. Creasey | |
| | on behalf of Plaintiff United States Trustee marjorie.creasey@usdoj.gov |

TOTAL: 3

**Dated: April 15, 2022**

**The following is ORDERED:**



Sarah A Hall
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| **TRENT DWIGHT FORD AND** | ) | BK-21-10574-SAH |
| **JILL NICOLE FORD,** | ) | |
| Defendants. | ) | **Chapter 7** |
| | ) | |
| **United States Trustee** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Adv. Number: 21-1062** |
| **Trent Dwight Ford and** | ) | |
| **Jill Nicole Ford,** | ) | |
| **Defendants.** | ) | |

## FINAL PRETRIAL ORDER

TRIAL DATE:                          April 25, 2022, at 9:30 a.m.

SCHEDULING CONFERENCE DATE:    November 15, 2021

APPEARANCES:    Marjorie J. Creasey for Plaintiff, United States Trustee (**"UST"**).

Jerry D. Brown for Defendants, Trent Dwight Ford and Jill Nicole Ford (**"Defendants"**).

# I. STIPULATIONS

A.      All parties are properly before the Court.

B.      The Bankruptcy Court has jurisdiction of the parties and of the subject matter pursuant to
        28 U.S.C. § 1334, 28 U.S.C. § 157, and the order of the district court authorizing referral
        of proceedings to the bankruptcy judges;

C.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and, to the extent the
        proceeding may be non-core, the parties consent to entry of judgment by the bankruptcy
        judge;

D.      Venue is proper under 28 U.S.C. § 1409;

E.      This action is brought under 11 U.S.C. §727(a) to determine dischargeability of the
        Defendant debts;

F.      Both parties consent to the entry of final orders and judgments by this Court on any issue

        in this adversary proceeding pursuant to Rule 7008 of the FED. R. BANKR. P.

G.      **Stipulations of Fact:**

 1.      In approximately 2014, Defendant Jill Ford began creating and selling children's

         apparel as a sole proprietor from her home under the name SnowSew.

 2.      The business grew and, in 2017, Defendant Jill Ford incorporated her business under the

         name "Oliver & Olivia Children Apparel, Inc" ("O&O").

 3.      Defendant Jill Ford is the 100% shareholder of O&O.

 4.      Defendant Jill Ford is the president of O&O.

 5.      Defendant Trent Ford is the vice president of O&O.

 6.      O&O manufactured and sold children's apparel and gifts on online platforms including

         Amazon, Etsy, and Jane, LLC.

 7.      The Defendants filed personal bankruptcy on March 17, 2021 by filing a petition,

         schedules and a statement of financial affairs ("**Ford bankruptcy documents**" this

phrase to include any subsequent amendments).  The case was assigned case number 21-10574-SAH (**"Ford bankruptcy"**).  Defendants signed their bankruptcy documents under penalty of perjury.

8.    Also on March 17, 2021, O&O declared bankruptcy by filing a petition, schedules and statement of financial affairs (**"O&O bankruptcy documents"** this phrase to include any subsequent amendments). The case was assigned bankruptcy case number 21-10572-SAH ("**O&O bankruptcy")**.  Defendant Jill Ford signed the O&O bankruptcy documents under penalty of perjury.

9.    In the year prior to filing these bankruptcies, O&O, through Defendant Jill Ford, requested and received loans designed to provide relief to businesses due to the COVID pandemic ("COVID loans").

10.    On April 7, 2020, O&O, through Defendant Jill Ford, received a PPP loan through MidFirst Bank ("MidFirst") in the amount of $97,300 ("MidFirst PPP").

11.    On May 18, 2020, O&O, through Defendant Jill Ford, received an Economic Injury Disaster Loan ("EIDL") loan from the SBA in the amount of $150,000.

12.    On September 28, 2020, O&O, through Defendant Jill Ford, received the Main Street Loan ("MSL") from Citizens Bank of Edmond ("Citizens") in the amount of $405,686.84.

13.    On November 5, 2020 O&O and Defendant Jill Ford, singed a lease for a 2020 Mercedes-Benz.

14.    On November 5, 2020, O&O and Defendant Jill Ford, contracted to buy a 2019 Cadillac Escalade for $84,875.48.

15.    On November 7, 2020, Defendant Jill Ford, along with her mother Cheryl Kliewer

contracted to buy a 2017 Cadillac XT5 for $41,985.36.  The Cadillac was for Cheryl

Kliewer.

16.    On November 12, 2020 Defendants Trent and Jill Ford closed on a $805,214 home in

Edmond, Oklahoma.

17.    On January 25, 2021, O&O, by and through Defendant Jill Ford, received a second PPP

loan from Citizens in the amount of $174,543.30 ("Citizens PPP").

18.    As of January 16, 2021, O&O employed approximately 47 people, including the

Defendants.

19.    Sometime between mid-February to early March 2021, O&O laid off the remainder of

its employees.

20.    Sometime between late February to early March 2021, O&O shut down.

21.    On February 25, 2021, Printed Tees Shirt Company("**PT**") was incorporated.

22.    Defendant Trent Ford is the 100% owner of PT.

23.    On the day of the Ford and O&O bankruptcy filings, Defendant Trent ford was 35

years old.  Defendant Jill Ford was 29 years old.  They married in 2010.

24.    The Defendants have three children, aged 6, 3, 2 respectively, at the time of the chapter

7 filing.

25.    Defendant Trent Ford has training in graphic designing and art.  Defendant Jill Ford

has training in fashion retail merchandising.

26.    In the Ford bankruptcy case, the Defendants list $903,088.54 in assets.  Among those

assets are Defendants' home, which they valued at $768,000.  Defendants have since

sold their home.

27.    Because the majority of their debt was listed as non-consumer, the Defendants were

exempt from taking the "means test" in their Chapter 7 case.  The Defendants did not have to qualify for Chapter 7 relief based on their income.  No party has challenged their designation.

28.    In the Ford bankruptcy, the Defendants list $2,360,126.08 in liabilities.

29.    In the Ford bankruptcy schedule of unsecured creditors, the Defendants list 149 separate creditors for a total of $1,143,707.82, including $114,519 in non-dischargeable student loans.

30.    In the Ford bankruptcy personal schedule of executory contracts, the Defendants list 24 separate obligations.

31.    Defendants amended their schedules E/F on April 13, 2021 to add an additional liability.

32.    Defendants amended their schedules A/B on April 20, 2021 to add a small oil and gas interest.

33.    Lyle R. Nelson "Trustee Nelson" was appointed the Chapter 7 Trustee of both the Ford and the O&O bankruptcies.  A telephonic §341 meetings of creditors ("341's" or "Ford 341" or "O&O 341", respectively) for both cases were scheduled for April 14, 2021.

34.    During the telephonic 341's on April 14, 2021, Trustee Nelson announced that the meetings would be continued to April 21, 2021 to be held in person at the U.S. Bankruptcy Courthouse in Oklahoma City for the benefit of the parties, due to the number of interested creditors, as well as the complexity of the cases.  Both Defendants attended the telephonic and "in person" 341's.

35.    At the 341's, counsel for Plaintiff appeared and asked questions of the Defendants.

36.    At the 341's, both Defendant Trent Ford and Defendant Jill Ford gave testimony and

neither asserted their fifth amendment privilege against self-incrimination.

37.    At the in person 341's, it was suggested that inaccuracies may exist in the Defendants' SoFA regarding income during relevant periods.

38.    It was then agreed that the issue would be investigated and an amendment to the SoFA would be made, as necessary.

39.    As promised, and after investigation, an amended SoFA was filed on May 6, 2021 to update the income disclosures based on the investigation.

40.    The O&O SoFA was also amended on May 6, 2021 to add company distributions received from March 15, 2020, to March 15, 2021, in the amount of $132,514.15.

41.    Defendants amended their schedules I/J on June 30, 2021 to revise their income in support of proving the ability to make mortgage payments going forward pursuant to a Reaffirmation Agreement.

42.    In the Ford original schedules and original SoFA, filed on March 17, 2021, the Defendants state the PT "was not yet started".

43.    In the Ford original schedules, the Defendants state that O&O was no longer operating as of March 1, 2021.

44.    In the Ford bankruptcy documents, the Defendants list an interest in fifteen (15) Louis Vuitton handbags ("handbags" this term to include, but not limited to, purses, wallets, billfolds), which they value at $9,500. In Defendants' Schedule D, all of said handbags are listed as having a possessory security interest against them.

45.    The Defendants did not claim the handbags as exempt in their bankruptcy schedule C.

46.    The trustee inquired about the handbags at the Ford 341 and was told that the lienholder had possession of those handbags.

47. At the time of the Ford and O&O bankruptcy filings Defendant Jill Ford had an open Venmo account.

48. At the time of the Ford and O&O bankruptcy filings Defendant Trent Ford had an open Venmo account.

49. At the time of the Ford and O&O bankruptcy filings Defendant Jill Ford had an open Square account.

50. At the time of the Ford and O&O bankruptcy filings Defendant Jill Ford had an open PayPal account.

51. On July 12, 2021, a Rule 2004 Exam was conducted by MidFirst ("MidFirst Exam").

52. At no time during the MidFirst Exam did either Defendant assert their fifth amendment privilege against self incrimination.

53. MidFirst did not object to the Defendants' discharge.

54. On August 4, 2021, both the UST and Citizens conducted 2004 exams of both the Defendants ("UST Exam" and "Citizens Exam", respectively).

55. At the UST and Citizens Exams both Defendants testified under oath, and neither asserted their fifth amendment privilege against self incrimination.

56. Immediately upon conclusion of the MidFirst and UST exams, Deputy U.S. Marshals appeared in the building of the law offices of John Mee III and presented Defendant Jill Ford with a "target letter". The target letter was issued by the U.S. Attorney's Office for the Western District of Oklahoma, and advised Defendant Jill Ford of a forthcoming indictment.

57. On August 13, 2021, Citizens filed an adversary proceeding against Defendant Jill Ford seeking to have her personal debt obligations to Citizens excepted from discharge

in the Ford bankruptcy case.  *Citizens Bank of Edmond v. Ford*, Adv. Case No. 21-01059 SAH (Bankr. W.D. Okla. 2021) ("Citizens complaint").

58.    On September 13, 2021, Defendant Jill Ford answered the Citizens complaint.

59.    The Citizens complaint has been in abeyance pending the outcome of this adversary proceeding.

60.    On September 10, 2021 the UST filed the instant Complaint objecting to the Defendants' discharge.

61.    The Defendants filed their answer to the UST complaint on October 8, 2021.  In their Answer, the Defendants asserted their constitutional fifth Amendment privilege.

62.    On January 7, 2022 Defendant Jill Ford was indicted in the Western District of Oklahoma for actions taken in procuring and spending pandemic-related government loans.

63.    On January 20, 2022, Defendant Jill Ford entered into a voluntary plea agreement, agreeing to plead guilty on one court of money laundering and one count of bank fraud.

64.    Defendant Jill Ford is awaiting sentencing.

H.    LEGAL ISSUES:

1.    Did the Defendants in the execution of their individual Ford Petition, Schedules and Statement of Financial Affairs ("SOFA") under "penalty of perjury" knowingly and fraudulently make false oaths in violation of 11 U.S.C. § 727(a)(4)(A) by making false statements and oaths  related to the bankruptcy case?

2.    Did the Defendants in the execution of their individual Ford Amended Schedules and Amended SOFA under "penalty of perjury" knowingly and fraudulently make false oaths in

violation of 11 U.S.C. § 727(a)(4)(A) by making false statements and oaths related to the bankruptcy case?

  3.  Did the Defendant Jill Ford in the execution of the "Oliver & Olivia Children Apparel, Inc." Petition, Schedules and Statement of Financial Affairs ("SOFA") under "penalty of perjury" knowingly and fraudulently make false oaths in violation of 11 U.S.C. § 727(a)(4)(A) by making false statements and oaths related to the bankruptcy case?

  4.  Did the Defendant Jill Ford in the execution of O&O's Amended Schedules and Amended SOFA under "penalty of perjury" knowingly and fraudulently make false oaths in violation of 11 U.S.C. § 727(a)(4)(A) by making false statements and oaths related to the bankruptcy case?

  5.  Did the Defendants at their individual Ford §341 meetings of creditors knowingly and fraudulently make false oaths in violation of 11 U.S.C. § 727(a)(4)(A) by making false statements and oaths related to the bankruptcy case?

  6.  Did the Defendants at the O&O §341 meetings of creditors knowingly and fraudulently make false oaths in violation of 11 U.S.C. § 727(a)(4)(A) by making false statements and oaths related to the bankruptcy case?

  7.  Did the Defendants at their Bankruptcy Rule 2004 examinations, conducted by MidFirst on July 12, 2021, the UST on August 4, 2021 and Citizens on August 4, 2021, knowingly and fraudulently make false oaths in violation of 11 U.S.C. § 727(a)(4)(A)?

  8.  Did the Defendants, with intent to hinder, delay, or defraud creditors transfer, remove, destroy, mutilate, or conceal, or have permitted to be transferred, removed, destroyed, mutilated, or concealed property of the estate, after the date of the filing of the petition in violation of 11 U.S.C. § 727(a)(2)(B) by concealing possession of Louis Vuitton handbags from

the chapter 7 trustee?

9.    Did the Defendants, with intent to hinder, delay, or defraud creditors transfer, remove, destroy, mutilate, or conceal, or have permitted to be transferred, removed, destroyed, mutilated, or concealed property of the estate, after the date of the filing of the petition in violation of 11 U.S.C. § 727(a)(2)(B) by concealing the post-petition sale of Louis Vuitton handbags and keeping the proceeds?

10.    Did the Defendants make false oaths with regard to their historical income, and, if so, do those false oaths show an intent to conceal from their creditors and bankruptcy officials the true source and amount of their historical income?

11.    At a minimum, did the Defendants act with reckless disregard in under reporting their historical income as well as when giving sworn testimony?

12.    Did the Defendants make false oaths with regard to their current income, and, if so, do those false oaths show an intent to conceal from their creditors and bankruptcy officials the true nature and amount of their current income?

1 3 .    At a minimum, did the Defendants act with reckless disregard in failing to disclose their actual current income in their Ford bankruptcy documents as well as when giving sworn testimony?

14.    Did the Defendants make false oaths with regard to their use of the COVID loan proceeds received through O&O, and, if so, do those false oaths show an intent to conceal from their creditors and bankruptcy officials the personal use of these loan proceeds?

1 5 .    At a minimum, did the Defendants act with reckless disregard in failing to disclose their use of the COVID loan proceeds on personal expenses, including a brand new home, luxury vehicles, and other luxury items when giving sworn testimony?

16.     Did the Defendants make false oaths with regard to the continued operations of O&O, and, if so, do those false oaths show an intent to conceal from their creditors and bankruptcy officials the continued operations ofthis business interest?

1 7 .   At a minimum did the Defendants act with reckless disregard in failing to disclose the continued operations of O&O upon filing both the Ford bankruptcy documents and the O&O bankruptcy documents as well as when giving sworn testimony?

18.     Did the Defendants make false oaths with regard to monies they continued to receive from O&O, and, if so, do those false oaths show an intent to conceal from their creditors and bankruptcy officials this income?

19.     At a minimum, did the Defendants act with reckless disregard in failing to report this continued income stream in their Ford and O&O bankruptcy documents, as well as when giving sworn testimony?

20.     Did the Defendants make false oaths with regard to the true circumstances and operations of PT, do those false oaths show an intent to conceal from their creditors and bankruptcy officials the true circumstances and operations of this business interest?

21.     At a minimum, did the Defendants act with reckless disregard in failing to fully disclose the circumstances and operations of PT in filing the Ford and O&O bankruptcy documents as well as when giving sworn testimony?

22.     Did the Defendants make false oaths with regard to Jill Ford's involvement in running PT, and, if so, do those false oaths show an intent to conceal from their creditors and bankruptcy officials the true circumstances of this business?

23.     At a minimum, did the Defendants act with reckless disregard in failing to disclose Jill Ford's involvement in running PT in their Ford and O&O bankruptcy documents,

as well as when giving sworn testimony?

24. Did the Defendants make false oaths with regard to the monies they received from PT, do those false oaths show an intent to conceal from their creditors and bankruptcy officials this income?

25. At a minimum, did the Defendants act with reckless disregard in failing to report the PT income in their Ford bankruptcy documents as well as when giving sworn testimony?

26. Did the Defendants make false oaths with regard to the possession of the Louis Vuitton handbags, and, if so, do those false oaths show an intent to conceal from their creditors and bankruptcy officials the continued possession of the handbags?

27. At a minimum, did the Defendants act with reckless disregard in failing to disclose their possession of the handbags in filing the Ford bankruptcy documents as well as when giving sworn testimony?

28. Did the Defendants make false oaths with regard to the post- petition sale of the handbags, and, if so, do those false oaths show an intent to conceal from their creditors and bankruptcy officials the post-petition sale of the handbags?

29. At a minimum, did the Defendants act with reckless disregard in failing to disclose the post-petition sales of the handbags in filing the Ford bankruptcy documents as well as when giving sworn testimony?

30. Does the failure of the Defendants to disclose their Venmo accounts show an intent to conceal those accounts from their creditors and bankruptcy officials?

31. At a minimum did the Defendants act with reckless disregard in failing to disclose the Venmo accounts in their Ford and O&O bankruptcy documents?

32. Does the failure of the Defendants to disclose their PayPal account show an

intent to conceal this account from their creditors and bankruptcy officials?

33.    At a minimum did the Defendants act with reckless disregard in failing to disclose the PayPal account in their Ford and O&O bankruptcy documents?

34.    Does the failure of the Defendants to disclose their Square account show an intent to conceal this account from their creditors and bankruptcy officials?

35.    At a minimum did the Defendants act with reckless disregard in failing to disclose the Square accounts in their Ford and O&O bankruptcy documents?

36.    Does the Defendants pleading of the fifth amendment in their Answer to the UST's complaint establish a negative inference with regard to the allegations against them in the UST's complaint?

## II. CONTENTIONS:

A.    PLAINTIFF UST:

   Facts:

1.    In approximately 2014, Defendant Jill Ford began creating and selling children's apparel as a sole proprietor from her home under the name SnowSew.

2.    The business grew and, in 2017, Defendant Jill Ford incorporated her business under the name "Oliver & Olivia Children Apparel, Inc."

3.    Defendant Jill Ford is the 100% shareholder of O&O.

4.    Defendant Jill Ford is the president of O&O.

5.    Defendant Trent Ford is the vice president of O&O.

6.    O&O manufactured and sold children's apparel and gifts on online platforms including Amazon, Etsy, and Jane, LLC.

7.    The Defendants filed their Ford bankruptcy on March 17, 2021.  Defendants signed

their bankruptcy documents under penalty of perjury.

8.    On the same day, the Defendants filed the O&O bankruptcy.  Defendant Jill Ford signed the O&O bankruptcy documents under penalty of perjury.

9.    Defendants amended their Ford bankruptcy schedules E/F on April 13, 2021 to add an additional liability.

10.    Defendants amended their Ford schedules A/B on April 20, 2021 to add a small oil and gas interest.

11.    The Ford and O&O 341's were originally scheduled for April 14, 2021, but were both continued to, and concluded on, April 21, 2021.

12.    The Ford Original SoFA lists Defendant Jill Ford's income for 2020 as $11,730.75 and Defendant Trent Ford's income as $25,000.04. Said income stemmed from W2 wages paid to the Defendants fromO&O.

13.    On May 6, 2021, after being questioned about their income at the 341's, the Defendants amended their Ford SoFA to include O & O distributions of $132,514.15 for the time period of March 15, 2020, to March 15, 2021. No distributionswere disclosed for the two years prior to 2020.

14.    Also on May 6, 2021, the Defendants amended the O&O SoFA to include Defendant Jill Ford's company distributions.

15.    Defendants amended their Ford schedules I/J on June 30, 2021 to revise their income.

16.    In the year prior to filing these bankruptcies, O&O, through Defendant Jill Ford, requested and received four loans designed to provide relief to businesses due to the COVID pandemic ("COVID loans"), detailed below.

17.    On April 7, 2020, O&O, through Defendant Jill Ford, received a MidFirst PPP Loan in

the amount of $97,300. Said proceeds were deposited into MidFirst O&O account ending in 0609. The purpose of the PPP loan program was to keep workers on payroll and to pay other worker protection costs.

18.    On May 18, 2020, O&O, through Defendant Jill Ford, received an Economic Injury Disaster Loan ("EIDL") through the Small Business Administration ("SBA") in the amount of $150,000. Said proceeds were deposited into MidFirst O&O account ending in 0609. Thepurpose of the loan was to meet financial obligations and operating expenses that could have been met had the COVID pandemic not occurred.

19.    On June 4, 2020, the Defendants made a payment of $16,000 to Neal McGee Homes toward the purchase of their new home, then under construction.  The source of these funds was Midfirst O&O account ending in 0609.

20.    On July 29, 2020, the Defendants made a payment of $7,417.57 to Neal McGee Homes toward the purchase of their new home. The source of these funds was Midfirst O&O account ending in 0609.

21.    On September 28, 2020, O&O, through Defendant Jill Ford, received the MSL from Citizens in the amount of $405,686.84. Said funds were deposited into Citizens O&O account ending in 3394. The purpose of the loan was to assist c o m p a n i e s s t r u g g l i n g  w i t h  t h e  C O V I D  p a n d e m i c  with capitalexpenditures and payroll.

22.    On September 30, 2020, the Defendants paid another $40,000 to Neal McGee Homes towardthe purchase of their new home. The source of these funds was Citizens O&O account ending in 3394 and, ultimately from the MSL.

23.    On October 8, 2020, the Defendants paid another $11,000 to Neal McGee Homes toward

the purchase of their new home. The source of these funds was Citizens O&O account

ending in 3394 and, ultimately from the MSL.

24.    On October 23, 2020, the Defendants paid another $73,632 to Neal McGee Homes

toward the purchase of their new home. The source of these funds was Citizens O&O

account ending in 3394 and, ultimately from the MSL.

25.    The $73,632 payment made on October 23, 2020 brings the total amount that

Defendants paid toward the down payment of their brand new home to $148,049.57.

The source of the $148,049.57 was the O&O MidFirst account and the O&O Citizens

account and, ultimately, a large portion of the funds came from the COVID loans.

26.    On November 5, 2020, O&O and Defendant Jill Ford, signed a lease for a 2020

Mercedes-Benz valued at $84,650.  This Mercedes is listed in the Ford Bankruptcy in

Schedule G.

27.    Also on November 5, 2020, O&O and Defendant Jill Ford, purchased a 2019 Cadillac

Escalade for $84,875.48.  This 2019 Cadillac is listed in the Ford Bankruptcy in

Schedule B.  A $10,000 payment toward for this vehicle came from Citizens account

ending in 3394 and, ultimately from the COVID loan proceeds.

28.    On November 7, 2020, Defendant Jill Ford, along with her mother Cheryl Kliewer,

purchaseda 2017 Cadillac XT5 for $41,985.36.  This 2017 Cadillac is listed in the

Ford Bankruptcy in Schedule B.

29.    No other vehicles are listed in the Ford Bankruptcy.

30.    On November 12, 2020, Defendants Jill and Trent Ford closed on their brand-new

$805,214 home in the Rose Creek Addition to Edmond, Oklahoma.

31.    Bank records, and the Defendants' sworn testimony, reveal that the funds used to close

on their brand new home were from O&O accounts and, ultimately, a large portion of

the funds came from the COVID loan proceeds.

32.    The COVID loan proceeds were initially deposited into O&O bank accounts and then

subsequently wired or transferred to the Defendants' personal bank accounts where

the proceeds were then used to close on their brand new home, as well as to obtain

vehicles, furniture, and jewelry.

33.    As of January 16, 2021, O&O employed approximately 47 people, both Defendants

among them.

34.    On January 25, 2021, O&O, by and through Defendant Jill Ford, received the second

PPP loan, this one from Citizens, in the amount of $174,543.30. Said funds were

deposited into Citizens O&O account ending in 3394. The purpose of the PPP loan

program was to keep workers on payroll and to pay other worker protection costs.

35.    Sometime between late-February to early March, 2021, and approximately one month

after receiving the Citizens PPP loan proceeds, O&O laid off all its employees.

36.    Sometime between mid-February to early March, 2021 O&O purportedly shut down.

37.    On February 25, 2021, Defendants incorporated PT.

38.    Defendant Trent Ford is the 100% owner of PT.

39.    On March 17, 2021 the Ford and O&O bankruptcies were filed.

40.    The Ford and O&O 341's were held on April 21, 2021.

41.    Both Defendant Trent Ford and Defendant Jill Ford gave sworn testimony in the O&O

Bankruptcy.  Both also gave sworn testimony in the Ford Bankruptcy.

42.    At the Ford 341, the Defendants both testified under penalty of perjury that their

schedules and SoFA were correct.

43.   At the O&O 341, Defendant Trent Ford testified under penalty of perjury that the O&O schedules andSoFA were correct.

44.   At the 341's, Defendants were specifically questioned about the amount of company distributions they received during 2020, above and beyondW-2 income, from O&O. Neither Defendant could give a definite answer.  However, both Defendants indicated that the company distributions weren't much.

45.   At the 341's, the Defendants agreed to prepare and submit a company distribution report to the UST's office.  The distribution report was subsequently provided to the UST.

46.   The Defendants subsequently amended both the Ford SoFA and the O&O SoFA to reflect cash distributions of $132,514.15 for the time period of March 15, 2020, to March 15, 2021. No distributionswere disclosed for the two years prior to 2020.

47.   The UST's detailed review and analysis of the Defendants' bank records reveal their 2020 distributions were significantly and materially higher than the $132,514.15 reported.  The UST's detailed review of the Defendants' bank records also reveal they received significant distributions in 2019.

48.   On July 12, 2021, counsel for MidFirst examined Defendant Jill Ford.  Defendant Trent Ford was also present at this exam and assisted his wife in answering questions.

49.   On August 4, 2021, counsel for the UST and counsel for Citizens examined Defendants Trent and Jill Ford.

50.   At the UST Exam, after going through the Defendants' distribution report and comparing it to detailed bank records, the Defendants acknowledged that their distributions were actually much higher than reported for 2020 in the amended

SoFA's as well as in the distribution report. The Defendants also acknowledged receiving company distributions for years prior to 2020.

51.   At the Ford 341 the Defendants testified that their only current income was unemployment benefits and cash gifts from Defendant Jill Ford's father.

52.   At both the O&O and Ford 341's, the Defendants swore under penalty of perjury that they were no longer receiving any incomeor distributions from O&O.

53.   At the Ford 341 the Defendants swore under penalty of perjury that they were not receiving any incomeor distributions from PT.

54.   Bank records reveal that the Defendants did in fact receive company distributions from O&O up to and after filing bankruptcy.  Bank records also reveal that the Defendants did receive company distributions from PT.

55.   During March 2021, the month of their 341's, the Defendants had cash deposits of $48,408.82 in one of their personal bank accounts.

56.   During April 2021, the month their 341's were held, the Defendants had cash deposits of $19,569 in a newly opened bank account.

57.   At the subsequent UST Exam, the Defendants admitted to making false statements at the Ford 341 regarding their current income.

58.   At the O&O 341, the Defendants testified that O&O's employees were **not** all paid the wagesthey were due.

59.   At the O&O 341 Defendants gave sworn testimony that they had not used the COVID loans for personal use.

60.   At the subsequent MidFirst Exam Defendant Jill Ford admitted under oath that false statements were made at the 341 with respect to the personal use of the loan proceeds.

61.    At the subsequent Citizens Exams, the Defendants admitted that but for the Main Street Loan they would not have been able to close on their brand new $805,214 home.

62.    On January 26, 2021, the day after receiving the Citizens PPP loan proceeds, $27,400 of those loan proceeds were used to re-acquire personal jewelry out of pawn from Diamond Banc. The Defendants used the Citizens PPP loan proceeds on additional personal spending as well.

63.    At the 341's, Defendants testified that sometime at the end of February 2021 they decided to cease operations of O&O.

64.    In the Ford original schedules and original SoFA, filed on March 17, 2021, the Defendants state that PT "was not yet started".

65.    In the Ford original schedules, the Defendants assert that O&O was no longer operating as of March 1, 2021.

66.    At both the Ford and O&O 341's, the Defendants again asserted that O&O was no longer operating as of the end of February/beginning of March 2021, and indicated that PT was not yet operating.

67.    Bank records reveal that PT was receiving deposits into its bank account prior to March 17, 2021.

68.    Bank records and subpoenaed documents reveal that O&O continued to sell merchandise long after March 1, 2021.

69.    Defendants testified at both the Ford and O&O 341's, and the MidFirst Exam, that Jill Ford was not involved in PT other than occasionally helping her husband.

70.    At the UST Exam, after being confronted with information, Defendant Jill Ford admitted that she, not Trent Ford, was essentially running PT.

71.    Bank records and the Defendants' sworn testimony reveal that PT was simply a scaled

back version of O&O and not run as a completely new business.

72.  In the Ford bankruptcy documents, the Defendants list an interest in fifteen (15)Louis Vuitton handbags, which they value at $9,500. In Defendants' Schedule D, all of said handbags are listed as having a possessory security interest against them.

73.  The Defendants did not claim the handbags as exempt in their bankruptcy schedule C.

74.  The trustee inquired about the handbags at the Ford 341 and was told by the Defendants thatthe lienholder had possession of those handbags.

75.  Subsequently, at the UST Exam Defendant Jill Ford testified that she sold the handbags in April 2021.  Bank records reveal Defendants were paid at least $13,050 for the sale of the bankruptcy estate's handbags, which they deposited into a  Ford personal bank account.

76.  At the time of the Ford and O&O bankruptcy filings Defendant Jill Ford had an open Venmo account, which is an account that can be used to for the quick and easy exchange of money directly between individuals.

77.  Defendants failed to disclose this Venmo account in their Ford schedules.

78.  Defendants failed to disclose this Venmo account in their O&O schedules.

79.  At the time of the Ford and O&O bankruptcy filings Defendant Trent Ford had an open Venmo account.

80.  Defendants failed to disclose this Venmo account in their Ford schedules.

81.  Defendants failed to disclose this Venmo account in their O&O schedules.

82.  As early as 2018 Defendant Jill Ford had a Square account, which, similar to Venmo, is an account that can be used to for the quick and easy exchange of money directly between individuals.

83.  Defendants failed to disclose this Square account in their Ford schedules.

84.  Defendants failed to disclose this Square account in the O&O schedules.

85.  At the time of the Ford and O&O bankruptcy filings Defendant Jill Ford had an open PayPal account, which is a financial vehicle that can be used to send money, make an online payment, or receive money or set up a merchant account.

86.  Defendants failed to disclose this PayPal account in their Ford schedules.

87.  Defendants failed to disclose this PayPal account in the O&O schedules.

88.  The UST filed its complaint objecting to the Defendants' discharge on September 10, 2021.

89.  The Defendants/Defendants filed their answer to the UST complaint on October 8, 2021.  In their answer, the Defendants plead the fifth amendment 22 times.  Specifically, to paragraphs 30 – 43 and 46-53.

90.  On January 7, 2022 Defendant Jill Ford was indicted in the Western District of Oklahoma for bank fraud and money laundering.

91.  On January 20, 2022 Defendant Jill Ford pled guilty to bank fraud and money laundering.  Her guilty plea lists an identical fact pattern asserted by the UST with respect to the transfer and use of some of the COVID loan proceeds.

92.  Defendant Jill Ford is awaiting sentencing.

**Fact Issues:**

1.  Was the Defendants' 2020 income materially greater than the $132,514.15 reported?

2.  Was the Defendants' 2019 income materially greater than the amount reported?

3.  Did the Defendants materially under report their current income?

4.  Did the Defendants receive distributions/income from O&O in March and April, 2021?

5.  Did the Defendants make false oaths about receiving distributions/income from O&O in March and April, 2021?

6.  Did the Defendants receive distributions/income from PT in March and April, 2021?

7.  Did the Defendants make false oaths about receiving distributions/income from PT in March and April, 2021?

8.  Did the Defendants provide false testimony at the O&O 341?

9.  Did the Defendants provide false testimony at the Ford 341?

10. Did O&O cease operations sometime between late-February and March 1, 2021?

11. Did O&O continue operations after March 1, 2021 by continuing to sell merchandise?

12. Did O&O continue operations after March 1, 2021 by channeling operations and sells through PT?

13. Did the Defendants make false oaths about the continued operations of O&O?

14. Did the Defendants make false oaths about the circumstances of PT?

15. Was PT simply a continuation of O&O and not operated as a separate independent business?

16. Did PT start receiving sales proceeds prior to the Ford and O&O bankruptcy filings?

17. Did Defendant Jill Ford have a greater role in the operations of PT than as she testified?

18. Did Defendants make false oaths with respect to Defendant Jill Ford's role in PT?

19. Was the source of the $16,000 paid to Neil McGee homes on June 4, 2020 from Midfirst O&O account ending in 0609?

20. Was the source of the $7,417.57 payment to Neal McGee Homes on July 29, 2020, towards the purchase of their new home from Midfirst O&O account ending in 0609?

21.   Was the source of the $40,000 payment to Neal McGee home on September 30, 2020 toward the purchase of their new home ultimately from COVID loan proceeds place into Citizens O&O account ending in 3394?

22.   Was the source of the $11,000 payment to Neal McGee home on October 8, 2020 toward the purchase of their new home ultimately from COVID loan proceeds place into Citizens O&O account ending in 3394?

23.   Was the source of the $73,632 payment to Neal McGee home on October 23, 2020 toward the purchase of their new home ultimately from COVID loan proceeds place into Citizens O&O account ending in 3394?

24.   Did the Defendants use the proceeds of the MSL to close on their brand-new $805,214 home in Rose Creek Addition?

25.   Did the Defendants make false oaths at the O&O and Ford 341's about using COVID loan proceeds for personal expenses?

26.   Was the Mercedes Benz leased on November 5, 2020 acquired with O&O proceeds?

27.   Was the Mercedes Benz leased on November 5, 2020 used as a personal vehicle for the Fords?

28.   Was the 2019 Cadillac ESV purchased on November 5, 2020 acquired with proceeds from COVID loans?

29.   Was the 2019 Cadillac ESV purchased on November 5, 2020 used as a personal vehicle for the Fords?

30.   Were the Citizens PPP loan proceeds received on January 25, 2021 used to re-acquire jewelry in the amount of $26,000?

31.   Did the Defendants use the COVID loans for personal use including buying furniture,

jewelry and paying personal use credit cards?

32.     Did the Defendants make false oaths about the use of proceeds received through the COVID loans for purchases of luxury vehicles, furniture, jewelry and personal use credit cards?

33.     Did the Defendants fail to pay wages owed to employees from PPP loans as the intended purpose of the loan required?

34.     Did the Defendants admit during the MidFirst Exam that they had, in fact, used the O&O loan proceeds for the purchase of their brand new $805,000 home?

35.     Did the Defendants fail to disclose possession of the Louis Vuitton Purses at the Ford 341?

36.     Did the Defendants sell the Louis Vuitton purses in April 2021 for $13,050?

37.     Did the Defendants fail to disclose to the chapter 7 trustee the sale of and proceeds from the Louis Vuitton purses?

38.     Did the Defendants fail to disclose their Venmo accounts?

39.     Did the Defendants fail to disclose the Square account?

40.     Did the Defendants fail to disclose the Paypal account?

41.     Were the false oaths made by the Defendants material?

## B.     DEFENDANTS TRENT DWIGHT AND JILL NICOLE FORD:

**Facts:**

1.   The Debtors and Defendants in this case are Trent Dwight Ford ("Trent") and Jill Nicole Ford ("Jill").

2.   Trent and Jill filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on

March 17, 2021, and was assigned Case Number 21-10574 SAH.

3. That same day, Jill also filed a Chapter 7 Bankruptcy for her defunct business, Oliver & Olivia Children Apparel, Inc., Case Number 21-10572 SAH.

4. On the day of filing, Trent was 35 years old. Jill was 29. They married in 2010.

5. Trent and Jill have three children, aged 6, 3, and 2 respectively, at the time of the Chapter 7 filing.

6. Trent and Jill both graduated high school, and both have some secondary education. Trent has training in graphic designer and art. Jill has training in fashion retail merchandising.

7. Neither Trent nor Jill have any formal training in accounting or business, and their only business experience has come from work experience.

8. Sometime around 2014, Jill began designing and selling children's clothing out of her house.

9. Due to an increase in business, Jill formed Oliver & Olivia Children Apparel, Inc. ("O/O") on June 29, 2017. O/O is an Oklahoma For Profit Corporation.

10. Jill was the President and 100% shareholder of O/O. Trent was the Vice-President and owned no shares.

11. Trent did not sign any documents related to the O/O Chapter 7 Bankruptcy.

12. O/O sold t-shirts and other unique items over online platforms such as Amazon, Etsy, and Jane.

13. Jill cites the pandemic, problems with overseas suppliers, and general financial mismanagement as the reasons for the failure of O/O. Fortunate exposure of some of the products sold by O/O on HGTV (a national network) caused their business volume to increase by millions literally overnight. Jill did not have the financial sophistication nor the business experience to adapt to such a sudden increase in sales volume and revenue.

14. In their personal Chapter 7 Bankruptcy, Trent and Jill listed $903,088.54 in assets. Among these assets were Debtors' home valued at $768,000.00. Debtors have since sold their home, and are presently renting an apartment in Arlington, Texas.

15. As part of their personal Chapter 7 Bankruptcy, Trent and Jill surrendered the 2019 Cadillac Escalade back to the lienholder, Ally Financial.

16. As part of the business Chapter 7 Bankruptcy. Jill rejected the lease on the 2020 Mercedes-Benz S450 Sedan and turned it in.

17. Currently, Trent and Jill do not own a car. They are borrowing two vehicles from Jill's father-- a 2013 Toyota Sienna and a 2016 Toyota Camry.

18. As part of the Chapter 7 Bankruptcy, Jill Ford surrendered her collection of purses to Diamond Bank, a creditor specializing in possessory loans secured by designer handbags.

19. Because the majority of their debt was non-consumer, Trent and Jill were exempt from taking the "means test" in their Chapter 7 case. Trent and Jill did not have to qualify for Chapter 7 relief based on their income. No party has challenged their designation.

20. Their income-- past, present, or future-- has little bearing on whether Trent and Jill are seeking a Chapter 7 discharge in good faith. They were exempt from qualifying under the means test.

21. In their personal Chapter 7 Bankruptcy, Trent and Jill listed $2,360,126.08 in liabilities. The bulk of Debtors' liabilities stem from their personal guarantees of several of the debts of O/O.

22. In their personal schedule of unsecured creditors, Trent and Jill listed 149 separate creditors, for a total of $1,143,707.82, including $114,519.00 in non-dischargeable student loans.

23. In their personal schedule of executory contracts, Trent and Jill listed 24 separate obligations.

24.  Trent and Jill filled out the petition, schedules, and statements thoroughly, truthfully, and accurately, to the best of their knowledge and belief, as of the date of filing.

25.  Lyle R. Nelson was appointed the Chapter 7 Trustee of both the business and the personal Chapter 7 cases, and a telephonic Meeting of Creditors was scheduled for April 14, 2021.

26.  During the telephonic Meeting of creditors on April 14, 2021, Mr. Nelson announced that the Meeting would be continued to April 21, 2021, to be held in person at the U.S. Bankruptcy Courthouse in Oklahoma City for the benefit of the parties, due to the number of interested creditors, as well as the complexity of the cases.  Trent and Jill attended all Meetings.

27.  On April 13, 2021, Trent and Jill amended their liability schedules to add two additional unsecured creditors.

28.  On April 20, 2021, Trent and Jill amended their asset schedules to include Trent's small interest in oil and gas royalties.

29. At the April 21, 2021, Meeting of Creditors, counsel for Plaintiff appeared and asked several questions of the Debtors.

30.  At the Meeting of Creditors, neither Trent nor Jill asserted their Fifth Amendment privilege against self-incrimination.

31. At the Meeting, it was suggested that inaccuracies may exist in the Debtors' Statement of Financial Affairs regarding income received during relevant periods.

32. Jill testified at the Meeting of Creditors that, due to her lack of financial sophistication, she may not have included draws and other perquisites she received from O/O as income when she originally made the disclosures.  Jill promised that she would investigate the issue, and that she would timely amend her Statement as necessary to correct any errors.

33. As promised, and after investigation, Trent and Jill amended the Statement of Financial Affairs on May 6, 2021, to update the income disclosures based upon their investigation.

34. Trent and Jill prepared and filed each of the aforementioned amendments voluntarily, as was their obligation as Debtors in bankruptcy. They have never refused to produce any document or disclose any item of information requested.

35. On April 29, 2021, the Plaintiff informally sent Debtors a list of documents to be produced in anticipation of a Rule 2004 Examination. Plaintiff's request was informal since Trent and Jill voluntarily agreed to cooperate in the Plaintiff's investigation.

36. To summarize the Plaintiff's document request as "voluminous" would be an understatement. Plaintiff essentially asked Trent and Jill to produce every legal and financial document in existence-- both personally and for the business-- for a three-to-four-year period preceding the Chapter 7 filings.

37. Despite the Plaintiff's requests, Trent and Jill provided Plaintiff with each and every document requested to the best of their ability-- thousands of pages of paper and electronic documents--freely, voluntarily, and without the necessity of a court order.

38. On July 12, 2021, MidFirst Bank, a creditor of the Debtors, conducted a Rule 2004 Examination of the Debtors. Counsel for Plaintiff appeared and observed as well. Both Trent and Jill appeared and gave testimony under oath to the satisfaction of all parties.

39. At no time during the July 12th Examination did either Debtor assert their Fifth Amendment privilege against self-incrimination.

40. MidFirst Bank did not object to the Debtors' discharge.

41. On August 4, 2021, Trent and Jill attended another Rule 2004 Examination, jointly conducted by the Plaintiff and representatives of Citizens Bank of Edmond, a creditor of the

Debtors.

42.  Both Trent and Jill testified under oath, to the satisfaction of the parties, and neither asserted their Fifth Amendment privilege against self incrimination.

43.  Immediately upon the conclusion of the August 4th Examination, Deputy U.S. Marshals appeared at the law offices of John Mee III and presented Jill with a "target letter".  The target letter was issued by the U.S. Attorney's Office for the Western District of Oklahoma, and it advised Jill to get her legal and financial affairs in order due to a forthcoming indictment.

44.  Upon receiving the target letter, Jill contacted Patrick Quillian, a local criminal defense attorney.

45.  Mr. Quillian informed Jill that she must begin asserting her Fifth Amendment privilege in the bankruptcy proceedings, whenever necessary, to protect her rights.

46.  On August 13, 2021, Citizen Bank of Edmond filed an adversary proceeding against Jill, seeking to have the debt guaranteed by her expected from discharge in her Chapter 7 case. *Citizens Bank of Edmond v. Ford*, Adv. Case No. 21-01059 SAH (Bankr. W.D. Okla. 2021).

47.  On September 13, 2021, Jill answered the Complaint filed by Citizens Bank.

48.  The Citizens Bank adversary proceeding has been in abeyance pending the outcome of this adversary proceeding.

49.  On September 10, 2021, the Plaintiff filed the instant Complaint, alleging several that "false oath" statements were made by Trent and Jill, both in their personal and business Chapter 7 cases.

50.  Trent and Jill timely answered the Plaintiff's Complaint on October 8, 2021.

51.  On January 7, 2022, Jill was indicted in the Western District of Oklahoma for actions taken

in procuring and spending pandemic-related government loans.

52.  On January 20, 2022, Jill entered into a voluntary plea agreement, agreeing to plead guilty to

one court of money laundering and one count of bank fraud.  As part of her plea agreement,

Jill will be required to pay back $252,143.35 in restitution to her affected creditors.

53. A portion of the Jill's restitution payments will go to Citizens Bank of Edmond.

54.  Jill is awaiting sentencing.

**Fact Issues:**

1.  Whether, and to what extent, are the Debtors' income disclosures material, when Debtors'
    income did not present obstacles in obtaining Chapter 7 relief?

2.  Whether the Plaintiff has discovered any alleged material misstatements in the Debtor's
    bankruptcy documents <u>independent of</u> the information and documentation the Debtors
    themselves provided?

3.  Whether Debtors' good faith cooperation with the Plaintiff and creditors in their case
    create a strong inference of good faith and non-fraudulent intent?

4.  Whether Debtors have committed a "false oath" during their personal Chapter 7 case, for
    any statement relating to the business Chapter 7 case?

5.  Whether, after a thorough review of the evidence, did Trent Ford make any false
    representations, personally or for the business?

6.  Whether either Debtor may be held liable for a "false oath" declaration, where the
    Plaintiff's basis for alleged non-disclosures were discovered by documents produced by
    the Debtors themselves?

7.  Whether culpability of the Debtors may be inferred by the plea agreement Jill reached

with the U.S. Attorney's office in her criminal proceeding?

8.   Whether the Debtors' financial sophistication and lack of business education or experience negate any inference of bad faith during these proceedings?

9.   Whether any errors and/or omissions in Debtors' schedules and statements were timely brought to the attention of Plaintiff and other creditors, so that no inference of fraudulent intent can be drawn from such omissions?

10.  Whether the Debtors should be penalized for inadvertent mistakes?

11.  Whether the allegation the Debtors failed to properly maintain adequate books and records of their business can form the inference of fraudulent intent?

12.  Whether an honest mistake or inadvertence can form the basis for the denial of discharge?

13.  Whether a debtor that comes forward and informs the Plaintiff and other parties of errors in the filings can be found to engage in a pattern of non-disclosure, absent other indicia of fraud?

14.  Whether Debtors knowingly and fraudulently made any false statements or omissions in connection with their personal bankruptcy?

### III. EXHIBITS

**A.   PLAINTIFF UST:**

1.   UST complaint, filed September 10, 2021, AP docket #1;

2.   Defendants' answer to UST complaint, filed October 8, 2021, AP docket #4;

3.   Final Pretrial Order [to be prepared];

4.   Defendants' bankruptcy petition, schedules and statement of financial affairs filed March

17, 2021, Bankr. docket #1;

5.    Defendants' pay advices filed March 17, 2021, Bankr. Docket #6;

6.    Defendants' amended schedules E, F filed April 13, 2021 Bankr. Docket #11;

7.    Defendants' amended schedules A, B, filed April 20, 2021, Bankr. Docket #21;

8.    Defendants' amended Statement of Financial Affairs filed May 6, 2021, Bankr. Docket #23;

9.    Defendants' amended Schedule I, J filed June 30, 2021, Bankr. docket #60;

10.   Oliver & Olivia Children Apparel, Inc. ("O&O") bankruptcy petition, schedules and statement of financial affairs filed March 17, 2021 (Case No. 21-10572 Bankr. Docket #1);

11.   O&O amended statement of financial affairs filed May 6, 2021 (Case No. 21-10572 Bankr. Docket #29);

12.   Transcript of Trent and Jill Ford 341 meeting of creditors held April 21, 2021;

13.   Transcript of O&O 341 meeting of creditors held April 21, 2021;

14.   Transcript of Jill Ford Rule 2004 Exam conducted by MidFirst Bank on July 12, 2021;

15.   Transcript of Jill Ford and Trent Ford Rule 2004 Exam conducted by UST on August 4, 2021;

16.   Transcript of Jill Ford and Trent Ford Rule 2004 Exam conducted by Citizens Bank of Edmond on August 4, 2021;

17.   MidFirst Bank statements for account ending in 0609;

18.   MidFirst Bank statements for account ending in 7325;

19.   Citizens Bank of Edmond bank statements for account ending in 3394;

20.   Citizens Bank of Edmond bank statements for account ending in 8689;

21.   Oklahoma's Credit Union statements for account ending in 6240;

22.   Oklahoma's Credit Union statements for account ending in 7670;

23.   Citizens Bank of Edmond bank statements for account ending in 1249;

24.    MidFirst Bank statements for account ending in 3241;

25.    MidFirst Bank statements for account ending in 2970;

26.    Bank of Oklahoma statements for account ending in 4357;

27.    O & O distribution sheet provided by the Fords;

28.    Summary exhibits of bank account activity;

29.    Citizens Bank of Edmond Main Street Loan documents;

30.    Citizens Bank of Edmond PPP Loan documents;

31.    Citizens Bank of Edmond RISE application and email correspondence from Jill Ford;

32.    Printed Tees incorporation documents;

33.    Checks to Neal McGee, homebuilder;

34.    Summary exhibit of Covid loans received;

35.    Plea agreement and indictment for Jill Ford entered on January 20, 2022;

36.    Closing docs for home at 16813 Little Leaf Lane, Edmond, Oklahoma;

37.    SBA PPP loan documents;

38.    Mercedes Benz lease;

39.    2019 Cadillac Escalade purchase documents;

40.    2017 Cadillac XT5 purchase documents;

41.    Documents, information and correspondence produced by Amazon and its agents in response to the UST subpoena, along with a copy of the UST subpoena and summary exhibit;

42.    Amazon lending application documents and Amazon seller contract documents;

43.    Accounts Receivable Factoring contracts;

44.    Documents, information and correspondence produced by Venmo and its agents in response to the UST subpoena, along with a copy of the UST subpoena and summary

exhibit;

45. Documents, information and correspondence produced by PayPal and its agents in response to the UST subpoena, along with a copy of the UST subpoena and summary exhibit;

46. Documents, information and correspondence produced by Square and its agents in response to the UST subpoena, along with a copy of the UST subpoena and summary exhibit;

47. 2020 federal tax return filed by Trent and Jill Ford;

48. Jill Ford LinkedIn profile;

49. O&O inventory list provided by the Fords to the UST;

50. All exhibits identified or utilized by Defendants/Defendants;

51. Rebuttal exhibits.


**B.    DEFENDANTS TRENT DWIGHT AND JILL NICOLE FORD:**

1. UST complaint, filed September 10, 2021, AP docket #1;

2. Defendants' answer to UST complaint, filed October 8, 2021, AP docket #4;

3. Final Pretrial Order [to be prepared];

4. Defendants' bankruptcy petition, schedules and statement of financial affairs filed March 17, 2021, Bankr. docket #1;

5. Defendants' pay advices filed March 17, 2021, Bankr. Docket #6;

6. Defendants' amended schedules E, F filed April 13, 2021 Bankr. Docket #11;

7. Defendants' amended schedules A, B, filed April 20, 2021, Bankr. Docket #21;

8. Defendants' amended Statement of Financial Affairs filed May 6, 2021, Bankr. Docket #23;

9. Defendants' amended Schedule I, J filed June 30, 2021, Bankr. docket #60;

10. Oliver & Olivia Children Apparel, Inc. ("O&O") bankruptcy petition, schedules and statement of financial affairs filed March 17, 2021 (Case No. 21-10572 Bankr. Docket

#1);

11.     O&O amended statement of financial affairs filed May 6, 2021 (Case No. 21-10572 Bankr. Docket #29);

12.     Plaintiff's request to Debtors to produce documents attached to an email dated April 27, 2021.

13.     All exhibits identified or utilized by Plaintiff;

14.     Rebuttal exhibits

## IV. WITNESSES

**A.     PLAINTIFF UST:**

1.     John McClernon, CPA, Bankruptcy Analyst/Auditor for the U.S. Trustee;
2.     Whitney Randall, Representative of Citizens Bank of
        Edmond;
3.     Jill Ford, Defendant;
4.     Trent Ford, Defendant;
5.     All witnesses listed or appearing for defendant.

**B.     DEFENDANTS TRENT DWIGHT AND JILL NICOLE FORD:**

1.     Trent Dwight Ford, the Debtor/Defendant
2.     Jill Nicole Ford, the Debtor/Defendant

## V. POSSIBILITY OF SETTLEMENT

Good_____;   Fair_____;   Poor__X___;

## VI. ESTIMATED TRIAL TIME: 2 days.

Respectfully submitted,

ILENE J. LASHINSKY
UNITED STATES TRUSTEE

s/ Marjorie J. Creasey
Marjorie J. Creasey, OBA #17819
Office of the United States Trustee
215 Dean A. McGee, Fourth Floor
Oklahoma City, OK  73102
(405) 231-4393/231-5958 [fax]
Marjorie.Creasey@usdoj.gov

Attorney for Plaintiff UST



/s/ Jerry D. Brown
Jerry D. Brown. OBA #16815
Jerry D. Brown, P.C.
5500 N. Western Ave., Suite 150
Oklahoma City, OK 73118
405-841-1000/405-841-1001 [fax]
jdbrownpc@sbcglobal.net

Attorney for Defendants
Trent Dwight Ford and Jill Nicole Ford


## JOINT CHRONOLOGY[1]


1.     In approximately 2014, Defendant Jill Ford began creating and selling children's

       apparel as a sole proprietor from her home under the name SnowSew.

2.     The business grew and, in 2017, Defendant Jill Ford incorporated her business under the

       name "Oliver & Olivia Children Apparel, Inc."

3.     On April 7, 2020, O&O, through Defendant Jill Ford, received the MidFirst PPP loan in

       the amount of $97,300.

---

[1] This is the chronology the parties can agree on. However, the UST would also refer the Court to the additional
chronological facts asserted in the UST's factual contentions set forth in page 13 of this Pre Trial Order.

4.     On May 18, 2020, O&O, through Defendant Jill Ford, received the EIDL loan from the SBA in the amount of $150,000.

5.     On September 28, 2020, O&O, through Defendant Jill Ford, received the MSL from Citizens in the amount of $405,686.84.

6.     On November 5, 2020 O&O and Defendant Jill Ford, signed a lease for a 2020 Mercedes-Benz.

7.     On November 5, 2020, O&O and Defendant Jill Ford, purchased a 2019 Cadillac Escalade for $84,875.48.

8.     On November 7, 2020, Defendant Jill Ford, along with her mother Cheryl Kliewer purchased a 2017 Cadillac XT5 for $41,985.36.   The Cadillac was purchased for Cheryl Kliewer.

9.     On November 12, 2020 Defendants Trent and Jill Ford closed on a $805,214 home in Edmond, Oklahoma.

10.    On January 25, 2021, O&O, by and through Defendant Jill Ford, received the second PPP loan, this one from Citizens, in the amount of $174,543.30.

11.    As of January 16, 2021, O&O employed approximately 47 people, including the Defendants.

12.    Sometime between late February to early March 2021, O&O shut down.

13.    Sometime between mid-February to early March 2021, O&O laid off the remainder of its employees.

14.    Defendants filed their individual Ford bankruptcy case on March 17, 2021.

15.    The O&O bankruptcy case was also filed on March 17, 2021.

16.    Defendants amended their schedules E/F on April 13, 2021 to add an additional

liability.

17. Defendants amended their schedules A/B on April 20, 2021 to add a small oil and gas interest.

18. The first §341 meetings of creditors for both the Ford and O&O cases were originally scheduled for April 14, 2021, but were both continued to, and concluded on, April 21, 2021.

19. Defendants amended the Ford SoFA on May 6, 2021 to add company distributions received from March 15, 2020, to March 15, 2021, in the amount of $132,514.15.

20. The O&O SoFA was also amended on May 6, 2021 to add the company distributions in the amount of $132,514.15.

21. Defendants amended their schedules I/J on June 30, 2021 to revise their income in support of proving the ability to make mortgage payments going forward pursuant to a Reaffirmation Agreement.

22. On July 12, 2021, the MidFirst Exam was conducted.

23. On August 4, 2021, both the UST and the Citizens exams were conducted.

24. On August 13, 2021 Citizens filed its §523 complaint against Defendant Jill Ford.

25. On September 10, 2021 the UST filed the instant Complaint.

26. The Debtors/Defendants filed their answer to the UST complaint on October 8, 2021. In their Answer, the Debtors asserted their constitutional Fifth Amendment privilege.

27. On September 13, 2021 Defendant Jill Ford answer the Citizens complaint.

28. On January 7, 2022 Defendant Jill Ford was indicted in the Western District of Oklahoma for bank fraud and money laundering.

29. On January 20, 2022, Jill entered into a voluntary plea agreement, agreeing to plead

guilty on one court of money laundering and one count of bank fraud.

30.    Jill is awaiting sentencing.